Consolidated case numbers 24-2033, 2041, and 2046, United States of America v. Kevin Fordham, Martin Murph, and Ed Reed, respectively. Oral argument is not to exceed 15 minutes. Decide for 24-2033 with the remaining cases submitted on briefs. Benjamin Allen for the appellant. You may proceed. Good afternoon. May it please the court. Ben Allen with guest Manningly and Hatchison from Lexington, Kentucky on behalf of appellant Kevin Fordham. It's a pleasure to be here in Detroit with you this afternoon. I would like to reserve three minutes of my time for rebuttal.  This was a lengthy 21-day, approximately 21-day case involving multiple defendants. In Mr. Fordham's brief, he's alleged five general issues for the court's consideration. And due to several constitutional errors and insufficient evidence, he's asking this court to reverse his conviction. And the alternative, as he's discussed in his brief, he's requesting a vacatur of his sentence because it is procedurally and substantively unreasonable. I would like first to address and focus the court's attention on the overwhelming breadth of the search warrant issued for several Facebook accounts in this case, ultimately linked to Mr. Fordham. On December 3rd, 2019, a federal magistrate judge issued a search warrant requiring Facebook to disclose 16 different categories of information, including all profile information and status updates for an unlimited period of time, all check-ins and other location information for an unlimited period of time, all past and present friends lists created by the accounts for an unlimited period of time, as well as all photographs and messages for a four-year period. This was the so-called two-part of the warrant. It demanded the disclosure of this information to the government, and then the government to search it, pursuant to the more limited second part of the search warrant. As the government claims, and as we've argued below, this warrant violated the Particularity Clause of the Fourth Amendment. The government's argued below that the two-part nature of the warrant has limited or complied with the Fourth Amendment in this case. However, the material disclosed by Facebook is still seized in this case. So your argument is the two-step kind of approach doesn't pass Fourth Amendment muster, or at least that you'd need the probable cause and the particularity even for the first step? Judge, the parties below didn't challenge the probable cause aspect of the warrant. But you're saying that part one of the test then also requires particularity? Yes, Judge, because this warrant is requiring Facebook to turn over an overwhelming breadth of information. That's still seized under the Fourth Amendment. So court after court have expressed concern about the breadth of these warrants. So can I ask you on that point, is the Fourth Amendment, oh I'm sorry, can you see me? I can see you, Judge, yes. Okay, is the Fourth Amendment analysis distinct depending upon the type of information at issue? For example, several categories of information are things the Facebook user posted publicly for the world to see on Facebook. Does that, does your argument shift depending upon the category of information or do you think the Fourth Amendment applies equally across the board? We would argue the Fourth Amendment applies equally across the board. This is information that the government obtained in this case through a search warrant that demanded Facebook to turn all this information over to the government. It seized this information and provided it to the government. I guess I'm not, sorry to interrupt, it's hard to, with the virtual situation, my apologies. I'm not understanding how, at least with respect to information the user voluntarily gives to Facebook to enable the use of Facebook, how that's not more in line with the third party doctrine type cases where we're getting business records from Facebook that there's no reasonable expectation of privacy in or am I thinking about that incorrectly? I understand your argument. As someone who's posting information on Facebook, are you making this publicly available? You know, in this case, if the court were to take that approach, why get a search warrant for this information at all? You could usually subpoena it. In this case, the government did obtain a search warrant. We believe that this individual who's posting information, and you can set your privacy settings on Facebook however you want, but an information who's trusting this information to Facebook, I believe, has a privacy interest in that information. So I don't think the third party doctrine would apply here. Given that you didn't challenge probable cause for the warrant overall, is your sense that the particularity that is in step two of the warrant just needs to be inserted somehow in step one and Facebook goes through your materials and then sends what seems to be kind of narrowed or a narrower time frame or narrowed to certain, I don't know, search terms? You know, given that there is cause to think you're going to find, you know, a particular probable cause standard in the Facebook materials, how do you craft a particularized warrant? Sure, and I think the Eastern District in United States v. SHIP, that's a case we cited in our brief kind of- Of New York, yeah. Of New York. There is this distinction between searching other areas of information where it is incredibly difficult, I'll concede, to find bits and pieces of evidence amongst benign information, email accounts, cloud accounts. I think that the judge in SHIP noted a distinction because in Facebook's case, this is a warrant that goes to Facebook, they can particularly find the information that they're looking for. So yes, the more restrained and the more restricted part two of the warrant could be part one. Because in this case, Facebook can find this information, doesn't have to turn this over or seize all this data, this information, and give it to the government because it can pinpoint that information. So by authorizing this warrant, we do in fact have a rummaging through somebody's personal information on Facebook. I'd like to address the government's rates below the good faith exception early on. And the district court found that as another reason to uphold this warrant. We're arguing that this warrant was so facially deficient that the officers executed it could not reasonably presume that it was valid. And at the outset, I'll concede that this court has addressed Facebook warrants, there's been some concern about their breadth, but found that the good faith exception applies. I would hearken back to a judge from my district, this is a case I didn't cite in my brief, but United States v. Broughton, it's a publicly available decision. Magistrate Judge Candice Smith noted in her decision that the good faith exception cannot shield over broad social media warrants forever. I think the concern expressed by these courts is valid, I think it's a matter that's growing, and I think now it's time for this court to set some limits in this case. And I think exactly what Judge Blomkatch mentioned is that part two of this more restricted search can become part one of that warrant. Is there something about this particular case that might take it outside of some of the particularity statements? I know it was a huge request, there's no question of that. But there's much discussion in the briefing about the efficacy of surveillance, the recording, finding available confidential informants, because of the nature of this very top layer of pretty big organization. The very top layer of the vice lords that my understanding was it was a three-year, is that right? It was a three-year investigation? And then we're home down now to the part where the Facebook and other warrants were issued. Do the particular facts of this case make a difference to what type of test should be applied? Or maybe even what type of test you would recommend be applied for these types of warrants? I'm going to try to parse that. Sorry, sorry. It's very much intertwined in this case in an unusual way. I was not trial counsel here, but I have many sympathies for the trial counsel, because it was a massive investigation, it was a massive trial. I think the court's question is, is there a test that's specific to this case, or does it vary upon the circumstances? What kind of review do we give these warrants? Yeah, probably I'm soliciting how you see the test to operate, but then I'm also soliciting your answer to the particularity in this case because of the status of the vice lord group that was being investigated. I understand. And, of course, in a particularity analysis, it doesn't invalidate the entire warrant, only the overbroad portions. I guess I can start there. In the context of this trial, and in this trial, with respect to Mr. Fordham, again, we had multiple defense, but with respect to Mr. Fordham, the evidence seized in search was critical, and they used Facebook messages. Again, there were three different accounts using different names, but Facebook messages that the government used to tie Mr. Fordham not only to his alleged role in the AVLN, the almighty vice lords, and his important leadership role, as well as his alleged drug activities. But what kind of test, I guess, would you construct for this case? I think it can vary. We have two-part tests for the seizure of, I believe it is, cell phone data. I believe the court can construct a different analysis here due to the nature of how Facebook can pinpoint and find this information. What would you identify as overbroad here? Exactly. Good question. Judge, we would argue that the evidence that came in in this case, the messages, the photographs, were photographs of Mr. Fordham with purported vice lord members. We argue that even the breadth of that search, which for photographs and messages was limited to, I think, a period of like four years, that would be overbroad in this case. So that would be the evidence that we're pointing to. I'm not aware of any evidence being introduced as far as GPS location or anything like that seized from Facebook, but those are the items of evidence that we're arguing that the court should have excluded. The messages and the photographs. Yes. Judge Ranch, I'm not sure I answered your question at this time. No, I think that's very helpful. I think what my concern was a little bit was the traditional investigative techniques argument that you did not need this rummaging. You should have honed your warrant or your shared communication to act order to a much more limited circumstance. My question was basically, in this particular case, is there a distinction? When we apply this case, apply any overarching test to this case, when you argue you should have done more traditional investigative techniques, is the answer to that not that they would not have been applicable or would not have been fruitful in the situation, considering the length of the investigation and the inability to use more traditional techniques? Okay. That sounds like you're addressing my Title III arguments. The wiretap. You want me to address that? Yes. I'm sunk because that's part of the test we're talking about.  I'm trying to address that the best way I can. I think trying to understand what the court's asking is that because of the hierarchical structure of the Almighty Vice Lords, I think the government's made the point that it was difficult to get to the upper echelons of that organization. And that attempts had failed. And attempts had failed. I would push back on that in the sense that one of the other arguments I haven't gotten to, and I'm over my time, is they did develop these leads. They had a CI. They had a confidential informant who was a critical witness in this case. So I think when it comes to the Facebook search or the Title III search, we would argue that they hadn't gone far enough. Great. You're above your time. I do actually want to ask you about your last issue before we let you go, the sentencing on the acquitted conduct. And I'm curious where you raise this issue about the acquitted conduct about the kind of, for the 924C, not the drug weight issue, right, but for the gun issue. Where you raise that before the district court? Because I saw there were supplemental briefing on the new acquitted conduct amendment, right? And that was all about... That was all about the drugs as far as I saw. And then so I was trying to figure out where this other issue was raised as to acquitted conduct. Absolutely, Judge. You're correct. The district court below did flag this issue. There was briefing on the issue. The majority of that stem related to the drug quantity. Right. However, Mr. Fordham in his sentencing memorandum did raise that as part of the overall analysis to his objection to the application of the dangerous weapon enhancement. So that's where the issue came in. The district court never addressed the use of acquitted conduct with respect to the firearms at sentencing. But Mr. Fordham did raise that in his sentencing memorandum.  Maybe I missed it. The only part of the sentencing memorandum that I see, it does say the jury returned a verdict of not guilty on count 41, but then makes an argument as to essentially why the enhancement shouldn't apply because it's improbable. I don't see the words acquitted conduct or the citation to that part of the guidelines anywhere. I mean, the judge has a lot, right? He has 40, 39 people in this case, a gajillion issues, and we're saying, well, he didn't reach this issue, right? And so I get that, but then I go and say, okay, well, where was it presented? And if this is an acquitted conduct argument, it's quite curious not to say acquitted conduct. That would be the only place that we could point to, Judge, where it was arguably raised. But a larger point I make in my brief is that it's part of the overall consideration of the facts that support or don't support that enhancement. The location of the firearms, all the facts surrounding that, of the 924C charge. Great, thank you. Thank you. Good afternoon, Your Honor. May it please the court. Megan Bean for the United States. This court should affirm Fordham's conviction and his 200-month sentence. And I will start with the first issue that Mr. Ellison raised, and that is the Facebook warrant for Mr. Fordham's Facebook account. The warrant that the government obtained here followed exactly the two-step process that this court has said is appropriate in searches of other electronic media in cases like Castro, Honeysucker, et cetera. Notably, and Your Honors were asking Mr. Ellison this question, I think today is the first time that it has ever been articulated what exactly he believes was the overbroad portion in the warrant, neither below nor in his opening brief. And really, in his reply brief, this is the first time he's really claimed that the messages, photographs, that those pieces of information sought from Facebook were overbroad. And of course, the remedy for an overbroad warrant is to strike just the overbroad portions, but it's incumbent upon the defendant to be specific about what the overbroad portions were, and he hasn't done that before today. But with respect to the warrant here, it is important to remember, first of all, what I just said, which is that it comported with this court's case law. But second of all, that the crimes under investigation here, as Judge Strange mentioned, they were broad crimes. They were wide-reaching conspiracies, a RICO conspiracy, drug conspiracies, and they lasted many years. So in the warrant itself, it explained the time limit went back to 2014, but the warrant contained information that Fordham was a member and was a high-ranking member of the vice lords even before that. I think in the warrant, it's like it went back to 2012, at least his membership. So it was part of your argument then that the kind of breadth of the first step is particularly appropriate in a case like this, where there's so many places where information and evidence could be stored electronically in different parts, or do you think that that is an appropriate step one in any case? You have a bank robbery that happened over a three-day period with no sense that it was in the works for years like this. Well, I think what this court has said in cases like Nestor and Richard is that there's something unique about electronic evidence that it's hard to know where evidence will be, especially during an ongoing investigation, that there's something unique about electronic evidence that makes a warrant like the one here, the two-step warrant, appropriate. But I think, Your Honor, to your second point, you're absolutely right that in this case in particular, where it is a broad, long-ranging crime under investigation, that is also an important consideration. And in fact, that's one of the things the district court relied on in finding that this warrant was appropriate in denying the motion to suppress. Is there a way to make this step one more particular, like just how the technology works or what Facebook does? I mean, the challenge here is one of particularity, right? Not that there's not probable cause. I think you'll find evidence within Facebook and his electronic communications on Facebook, but that you didn't really specify. How does that work, given the government's kind of communications with Facebook and how it can ask for information? Your Honor, I think, again, here that I'd argue that the step one was not overbroad because when you're looking at the target offense under investigation, being a member of the vice wards impacted every area of someone's life. It influenced who they're communicating with, how they can communicate with them, where they're going. Events they're attending. This was not just, for example, in the ship case, I think that Mr. Ellison cited. That was a felon in possession case. That's different. But here, where we have a very wide target offense or target offenses, it would be difficult to be more particular because evidence related to vice wards membership or the drug conspiracy could be found in any space, really, of this social media account, which is made to help people interact. And so seeing who Fordham's interacting with, events he's attending, these are all relevant to vice wards membership. So especially with respect to this case, I don't believe there's a way to make the first step more particular. Some courts counsel have a- Go ahead, Judge Tranch. No, you go ahead. Thank you. Some courts have offered a temporal limit. They've spotted you. The concerns about the data can be really anywhere within the Facebook files. But they've said, well, you can at least limit this temporally. What's your reaction to that in a case where the allegations are the vice wards membership started around 2012, but Facebook information goes back a decade before that, at least? Your Honor, thank you for raising that. Here, there was a temporal limitation. And I believe this court has actually never specifically said that one is required. But Your Honor is correct. That is one way that the government could limit the search. And here, it did just that. It limited the time of the information it could seize back to January of 2014, which, again, as I mentioned, was actually more limited than the time period in which the warrant made clear Fordham was a member of the vice wards. So that is a way that you could. In my misunderstanding, I thought that was the step two limits that imposed the temporal. I guess certain categories of the initial disclosure from Facebook were time limited. Others were not. And then at step two, it narrowed down further to the target offenses and time. I think what I'm asking is, some courts have said at the initial disclosure phase at step one, you should impose a temporal limit. And I gather that's what your friend on the other side is saying was lacking here and makes step one problematic. Your Honor, I'm sorry I misunderstood your question. Yes, I understand what Your Honor is saying. But here, the first step of the warrant to Facebook, Your Honor is correct. There were time limitations in place. There were time limitations on how many of the categories of information. Four categories of information. And those categories of information are photographs, records and contents of communication and messages, records of Facebook searches. So these are the categories that Mr. Ellison is specifically saying were overbroad. They were limited in time to actually a more limited time period than the warrant says Fordham was a member of the Vice Lords. So step one had the 2014 to 2019 limitation? For some categories. For some, yes. For some categories only. And were there 16? How many categories of information were requested? Yes, I believe there were 16, Your Honor. 16, I think. I'll note that not all of the information sought from Facebook can be limited. So for example, I guess the length of service, that's not really something that's just a fact, right? The information about the account owner, again, that's not something that can be really limited in time period. But for, I guess, the categories that Mr. Fordham is seeing are overbroad, there was a time limitation at both step one and step two of attachment B. I'm struggling. I understand and ask your opposing counsel about some of these traditional methods. How do you find this? Where were you in this particular investigation? But then if you turn to the other side and you think, you're asking for 16 categories of information, only four of which are limited. You're asking for them from 2014 to 2019. The quantity of information requested, it feels very much like a rummage, as they say in the Fourth Amendment, a rummage through everything. You get to look at their entire life. We know that the Fourth Amendment is speaking about protection of the privacies of life against arbitrary power and the aim to place obstacles in the way of too permeating police surveillance. How can this warrant requesting that amount of information satisfy the Fourth Amendment expectations that undergird its rule? Because I think a lot here depends on the crime under investigation. First of all, I think some of the Fourth Amendment concerns that Riley have addressed said get a warrant. The government first cleared that hurdle. Next, we look at the time period here that it was limited to. That was actually narrower than the amount of time that Mr. Fordham was a member of the vice lords. I think it also would not be appropriate to say that the government could not investigate the full scope of his crimes just because he committed crimes over decades. I don't think that's what the Fourth Amendment requires either. It requires a tie between the information sought, the evidence of the crime sought, to the location. Here, Mr. Fordham was committing crimes for decades. The government should not be limited arbitrarily in the amount of time over which it can investigate his involvement. How do we fashion a test that addresses where the dividing line is? I think it's very difficult to create a bright line test. I think that this court in cases looking at searches of electronic media have said we're not going to limit it to a number of years. We're going to take every case as it comes and look again at the crime under investigation balanced against what the warrant was limited to, what were the target offenses, how long was the person committing crimes. I don't think, Your Honor, that there is an easy bright line test, but I think when it comes in this case to a search of a person who was committing crimes for a long period of time and these crimes permeated every aspect of his life, as I mentioned, that this certainly was not an overbroad warrant here. Before your time elapses, I wonder if you might address some of the questions that I asked your friend about acquitted conduct and the sentencing enhancement. Maybe you'll just start with do you think that the issue about acquitted conduct vis-à-vis the firearm in 924C acquittal was properly raised before the district court? Your Honor, I know that defense counsel did object to the PSR's application of the enhancement in there and defense counsel's objection. He did note that he had been acquitted of count 41. I don't think there was as detailed an analysis of what that meant as there was on the drug quantity. And so I think it would be fair to say that it was not addressed in terms of this change to the guidelines. But waiver aside, I think the district court correctly did enhance Mr. Fordham's sentence and that's because it did not rely on acquitted conduct at all. Mr. Fordham was acquitted of possessing a firearm in furtherance of a drug trafficking offense. All the district court had to find in order to enhance the sentence was just that he possessed a firearm during the offense. This court has said that's a lower evidentiary burden for the government that in furtherance of peace requires additional proofs by the government. And so while possession may be insufficient to convict a defendant of a 924C, possession can be sufficient to apply the enhancement. So even if this court were to find that that was preserved, the district court did not rely on acquitted conduct to enhance the sentence. There's a lot of overlap here, right? I mean, we're talking about the same three guns in the rooms, the one I think what one is loaded. It's all the same factual predicate. The jury says this is an in furtherance of drug trafficking, right? And the enhancement is this, you know, have you possessed this? And then there's a presumption that it is, you know, connected to the drug trafficking that then the defendant can try and rebut. We're getting at very, very similar things and a lot of, you know, if not complete factual overlap in the predicate. And it strikes me that the change in the guidelines was meant to target kind of situations like this. Your Honor, I disagree with you. And based on what your runner correctly noted, and that's the difference in what's required to prove the in furtherance portion of the 924C and the possession during an offense to apply the enhancement. There is a difference. And this court has said as much. And I think the 11th Circuit addressed this very recently and kind of helpfully explained the difference, seeing that a connection is shown by less evidentiary proof. Well, it's all less evidentiary proof because there are different burdens. I think even setting aside the different burden of proof, showing a possession during an offense, which then flips the burden to the defendant to show that there wasn't a connection, is different than proving the in furtherance element of the 924C. The government has to affirmatively prove that connection. Again, even setting aside the different burdens of proof, they have to show the possession in furtherance that is not required for a district court to apply the enhancement. It's as simple as the gun was possessed during the offense. Then it's on . . . But if you have all of those components and they are part of the argument of the case and defense counsel has said, I object to the acquitted conduct, why doesn't the court need to respond? I mean, here it's not like the court gave some too short information or explanation. The court did not address that at all. And how can, short of absolute waiver, which I think may be questionable on this record, why wouldn't the court need to have addressed this or need to address it on remand? Well, because, Your Honor, because I think the court's position in its explanation was that this wasn't acquitted conduct. So if Your Honor does not believe that this was waived for not being specifically raised below, the court explained its work and it said there was a gun, three guns, possessed in a room with the marijuana and the defendant did not bring forth any evidence to rebut the presumption that then applied. There was nothing more that was required. But even if the court were to disagree and believe that this sentencing enhancement did rely on acquitted conduct, the Sentencing Commission leaves that discretion with the district court. And so there was no clear error here for the court properly applying the test. And I see I'm over my time. Any more questions, Judge Hermendorfer? Respectfully ask this court to affirm. Thank you. Thank you.  Judge Schrantz, I'll try to utilize my limited time here to address my muddled response, I think, to your important question, that is, what type of test are we going to apply here? Is it a bright-line test? I don't, not up here arguing for a bright-line test in every single case. I think these district court judges have the discretion, depending on the size of the case, to tailor appropriately. However, there is a distinction between other electronic discovery cases and what happened here. That is the Facebook case. I think the court should have here made Part 1 of that warrant more limited. Even when it comes to the emails, the pictures, and the stuff that actually came in that the court could excise under the Particularity Clause of the Fourth Amendment. We would argue that that is too broad. In what way is it too broad? I thought in your brief, you argued really at Step 1 that there were not sufficient temporal limits or connections to the crimes. Are you asserting new limitations that should have been in the warrant now? Judge, not necessarily. We did not specifically address, as counsel for the government noted, we did not specifically address the particularity of the emails and the pictures in our briefs. But this court is free to consider the record in this case and what came in. Yes, we are arguing that that four-year period is too broad in this case. Counsel is correct. The evidence was that Mr. Fordham was a member of this organization for longer than that four-year period. However, there was no evidence that he was not, that that four-year period for the seizure, which as Judge Stranch, you know, is very broad. This is a massive amount of information. We would argue that that period could have been shorter and should have been shorter. Before I run out of time, I'm sorry. Go ahead. I'm sorry. Go ahead. No, please, please. I do want to get to the sentencing argument with respect to acquitted conduct. We don't believe that we did waive that. He did raise that in objection. However, it was not discussed by the district court in sentencing. There's limited mention of it in briefing, but there was zero discussion about that during his sentencing. However, because he did raise an objection, we would argue that he did preserve that. And Judge Blomkamp, as you said, I don't think the district court could have ignored or should ignore what the jury did in this case, and that is it did not find that he possessed those firearms in connection with any drug trafficking offense. So I think this is an interesting question for the court to consider in light of the new acquitted conduct and the policy guidance provided by the Sentencing Commission. I see I'm out of time, so if the court has no questions, I'd ask the court reverse. Thank you, and thank you, counsel. I believe you're appointed under our CJA Act, is that? And I know other counsel who are here today, but also who I've briefed for other members of this court, and we thank you all for your service. Thank you for your time.